PRESIDING JUSTICE ZENOFF, dissenting: I respectfully dissent. The majority agrees with defendant that the evidence obtained from Officer Woodford’s radar device was inadmissible under section 11 — 604(b) of the Code (625 ILCS 5/11 — 604(b) (West 2008)). A closer reading of the statute in question reveals that both defendant and the majority focus on the wrong sign; and thus, section 11 — 604(b) of the Code and its prohibition on electronic speed-detecting devices does not even apply here. The trial court properly admitted the radar evidence. Section 11 — 601(c) of the Code (625 ILCS 5/11 — 601(c) (West 2008)) provides that, in an urban district, the maximum speed limit for all vehicles is 30 miles per hour, unless some other speed restriction is established. The maps, diagrams, and photographs upon which defendant bases his argument show that he was operating his vehicle in an urban district, which is defined as “[t]he territory contiguous to and including any street which is built up with structures devoted to business, industry or dwelling houses situated at intervals of less than 100 feet for a distance of a quarter of a mile or more.” 625 ILCS 5/1— 214 (West 2008). Section 11 — 604(b) of the Code provides, in pertinent part, as follows: “Whenever any *** city *** determines, upon the basis of an engineering or traffic investigation concerning a highway or street *** that a maximum speed limit prescribed in Section 11 — 601 *** is greater or less than is reasonable or safe with respect to the conditions found to exist at any place or along any part or zone of such highway or street, the [city] shall determine and declare by ordinance a reasonable and safe absolute maximum speed limit at such place or along such part or zone, which: (1) Decreases the limit within an urban district, but not to less than 20 miles per hour; or (2) Increases the limit within an urban district, but not to more than 55 miles per hour[.] * * * A limit so determined and declared *** becomes effective, and suspends the application of the limit prescribed in Section 11 — 601 of this Chapter, when appropriate signs giving notice of the limit are erected at the proper place or along the proper part or zone of the highway or street. Electronic speed-detecting devices shall not be used within 500 feet beyond any such sign in the direction of travel; if so used in violation of this Section evidence obtained thereby shall be inadmissible in any prosecution for speeding.” (Emphasis added.) 625 ILCS 5/11 — 604(b) (West 2008). The trial court sustained the City’s objection to defendant’s attempt to prove that the sign at Dawson Avenue reducing the speed limit on State Street from 35 miles per hour (set by the sign posted at Vale Avenue) to 30 miles per hour was located less than 500 feet from the location of his vehicle when his vehicle’s speed was measured. On appeal, defendant relies on photographs, maps, and diagrams that were not admitted into evidence at trial. As the majority notes, although it is axiomatic that documents that are dehors the record may not be considered on appeal (see, e.g., Knapp v. Bulun, 392 Ill. App. 3d 1018, 1027-28 (2009)), the City indicates that it has no objection to defendant’s reliance on these materials. In any event, even if the facts are as represented by defendant in the nonrecord materials, I would submit that, by its terms, section 11 — 604(b) does not apply here. When a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. Gallagher v. Union Square Condominium Homeowner’s Ass’n, 397 Ill. App. 3d 1037, 1041 (2010). Section 11 — 604(b) authorizes a city to alter the statutory 30-mile-per-hour speed limit in an urban district. The altered speed limit takes effect “when appropriate signs giving notice of the limit are erected.” 625 ILCS 5/11 — 604(b) (West 2008). Section 11 — 604(b) further prohibits the use of electronic speed-detecting devices within 500 feet beyond “any such sign.” (Emphasis added.) 625 ILCS 5/11 — 604(b) (West 2008). The use of the adjective “such” plainly indicates that the 500-foot rule applies only in the case of a sign erected to modify the statutory speed limit set forth in section 11 — 601. It does not, by its terms, apply to signs posting the standard speed limit set by section 11 — 601, even where the section 11 — 601 limit is a reduction from the section 11 — 604(b) modified limit. An examination of section 11 — 601 reveals no language restricting the use of electronic speed-detecting devices. Under section 11 — 601, the speed limit at the intersection of East State Street and South Rockford Avenue — in an urban district— was 30 miles per hour unless modified by the City. Thus, the 30-mile-per-hour sign at Dawson Avenue did not give notice of a special speed limit established by the City under section 11 — 604(b); it merely gave notice of the standard speed limit prescribed by statute for vehicles traveling in an urban district. The 35-mile-per-hour speed-limit sign at Vale Avenue was the one that modified the 30-mile-per-hour standard speed limit prescribed in section 11 — 601 for urban districts. Defendant’s figure 3, attached to his brief, makes it clear that he was measuring the distance from the 30-mile-per-hour sign to the location of his car when his speed was clocked. He states on figure 3 at “B,” “the intersection [where he was when his speed was clocked] is therefore well within an area 500 feet beyond the speed limit sign (a sign that reduces the speed limit on State Street).” Apparently defendant, and the majority, think that section 11 — 604(b) prohibited the use of the electronic speed-detection device within 500 feet of the 30-mile-per-hour sign because it reduced the speed limit from 35 to 30 miles per hour. However, as discussed above, a close reading of the statute makes it clear that the restriction on electronic devices is referenced only with respect to a speed-limit sign that modifies the standard speed. The word “such” refers back to a sign, described in the preceding sentence, that “suspends the application of the limit prescribed in Section 11 — 601.” 625 ILCS 5/11 — 604(b) (West 2008). Accordingly, if the sign at Vale had been for a 30-mile-per-hour limit, and the one at Dawson for 25 miles per hour, then by virtue of the statutory language in section 11 — 604(b), the 500-foot statutory restriction would have been applicable to and measured from the sign at Dawson. Because the sign actually posted at Vale (35 miles per hour) signaled an increase in the standard speed, and the one at Dawson, a return to the section 11 — 601 urban limit (30 miles per hour), the reduction itself does not render the electronic speed-detecting-device restriction applicable. Certainly if that had been the intent of the legislature, section 11 — 604(b) would have been drafted differently. Clearly, the protection of section 11 — 604(b) does not apply here and the radar evidence was admissible. It is true that “[a] literal interpretation [of a statute] is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation].” Grever v. Board of Trustees of the Illinois Municipal Retirement Fund, 353 Ill. App. 3d 263, 266-67 (2004). In my view, none of these criteria for departing from the plain statutory language are present here. Defendant argues that the limitation on the use of electronic speed-detecting devices within 500 feet of a speed-limit sign protects motorists from speed traps. Given a literal interpretation, the statute serves this purpose by preventing local governments from setting up speed traps in areas where they have exercised their authority to establish a special speed limit lower than the statutory limit. In such cases, even conscientious motorists could be taken unawares by the change. It does not necessarily follow, however, that motorists are entitled to the same protection on roads where the speed limit is fixed at the standard level established by statute — even if the sign posting the standard level constitutes a reduction from a sign posting a modified limit. It can be argued that motorists should always be prepared to slow their vehicles to the appropriate statutory speed limit and need not be afforded 500 feet of leeway to do so. See 625 ILCS 5/11 — 601(a) (West 2008) (stating that motorists have a duty to decrease their speed from the posted limit under certain circumstances such as when approaching intersections, curves, or hills). Thus, a rule regulating the use of electronic speed-detecting devices only where a special speed limit applies does not produce absurd results. Moreover, requiring a police officer to investigate whether a 30-mile-per-hour sign in an urban district is one that represents a return to the standard limit from a preceding sign that modified it would be an undue burden on law enforcement and inconsistent with enhancement of public safety. The General Assembly has not clearly expressed an intent to provide motorists with 500 feet of leeway to reduce their speed in all circumstances, and the General Assembly’s failure to do so does not, in my view, result in a great injustice. Because I would conclude that introduction of the radar evidence was not prohibited by section 11 — 604(b), it is not necessary to address the parties’ dispute regarding either the location of the use of the radar device or the sufficiency of the officer’s testimony alone to sustain the speeding conviction. I would affirm the judgment of the trial court.